## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STEPHANIE POWERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 4:21-cv-12125-MRG** |
| ) | |
| **RECEIVABLES PERFORMANCE** ) | |
| **MANAGEMENT, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM AND ORDER
### RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 86] &
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [ECF No. 81]

**GUZMAN, J.**

Plaintiff Stephanie Powers ("Plaintiff" or "Powers") brings suit on behalf of herself and a putative class of similarly situated individuals, against Defendant debt-collection company Receivables Performance Management LLC ("Defendant" or "RPM") alleging violations of Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A ("Chapter 93A"). In short, Powers alleges that RPM engaged in a systematic practice of violating Massachusetts debt collection regulations by initiating telephone communications regarding a debt in excess of two times within a seven-day period to the Plaintiffs' telephones. See 940 CMR § 7.04(1)(f). Before the Court are two important motions: Defendant's motion for summary judgment, ECF No. 86, and Plaintiff's motion for class certification, ECF No. 81. For the reasons stated below, Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's motion for class certification is **GRANTED IN PART**.

I.      **BACKGROUND**

      A.    **Relevant Facts to Summary Judgment**

RPM is a third-party debt collector located in the state of Washington. [ECF No. 82 at 3]. RPM does not own the debts that it attempts to collect; it is hired by creditors to collect those debts on their behalf. [Id.] RPM primarily works with telecommunications companies, including some major cell communications providers and satellite providers, to collect debt from past due accounts. [Id.] To collect this debt, RPM operates a complex collection management system ("CMS") to maintain consumer information and call them using its dialer platform. [Id.] RPM has detailed information about each debtor: who they are, where they are, how much is past due, how long they have been past due, and their mail addresses. [Id.] During discovery, RPM produced a call file ("Call Data") containing the name and address of the debtors called by RPM, including the date, time, and a result for each call. [Id. at 5-6]. A subset of the Call Data specifically identifies the number of "Massachusetts debtors whose debts Defendant attempted to collect between September 18, 2014 and September 18, 2018 where the debtor's debt(s) was alleged to be more than thirty days past due and where Defendant placed more than two collection calls to said debtor's telephone within a seven-day period." [Id. at 5]. Accordingly, the Call Data can be limited to Massachusetts debtors with Massachusetts addresses, debtors whose debt is more than thirty days past due, and only people who RPM called more than twice in a seven-day period. Additionally, the Call Data includes the results of the calls, such as whether the caller reached the person, or reached an answering machine and either hung up or left a message. [Id. at 6]. For just calls where RPM reached the person or reached an answering machine and either hung up or left

a message, the Call Data shows [REDACTED][1] unique telephone numbers were called more than twice in a seven-day period [Id. at 6].

Plaintiff Stephanie Powers is an individual residing in Shrewsbury, Massachusetts. [Id.] Plaintiff alleges that while RPM was collecting debt from her, it communicated with her by telephone more than twice in a seven-day period on multiple occasions. [Id.] Powers alleges injuries of invasion of privacy and emotional distress and is seeking actual damages as to both. [ECF No. 104 at 10]. Specifically, Powers alleges RPM's excessive calls were "frustrating and annoying," and caused her "fear, anger, anxiety and wasted her time[.]" [Id. at 3, 10]. The only evidence Powers asserts for her injuries is her own deposition testimony. [See Powers Tr., ECF No. 104-4 (fear: 140:10-15 ("I was in fear somewhat. Yes, I was in fear."); 182:24-183:11 ("I thought it was a scam…[s]o I did have a little fear"); frustration and annoyance: 5:25-6:8 ("Because it was kind of getting annoying of them calling me two to three times a day, everyday. And basically that's why; it was getting annoying, it was getting really frustrating."); 183:13-19 ("It caused me frustration"); anger: 180:23-181:9 ("Yes, it did make me angry because after the second call I told them, Do not call me any more"); anxiety: 181:15-20 ("I did get anxiety because it was like - - I felt like nobody was listening to me"); 182:1-7 ("But there was days when I wanted to cry because it was, like, how many times can I tell these people that -- to stop calling me, and they wouldn't stop. It just got me upset"); wasted time: 184:14-18 ("It took my time away from my baby when, you know, he was still a baby. So it took time away from that; took time away from my other children, and it basically stopped me in my tracks of doing what I was doing for my kids."))].

---

[1] The exact number of calls identified by the Plaintiff is under seal and can be found in ECF No. 90-1.

Powers does not possess any documents evidencing the existence of her emotional distress and she has never spoken with a health care provider regarding RPM causing her distress. [ECF No. 104-1 ¶ 15]. Powers had preexisting mental health challenges including PTSD, anxiety, and depression dating back to 2000. [Id. ¶ 16]. Powers has not suffered any economic or monetary harm as a result of RPM's alleged conduct. [Id. ¶ 19].

### B.  Procedural History

The Court incorporates the procedural history in this matter as detailed by the parties in response to a show cause order. [See ECF No. 153].

## II.    MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standards

#### i.  Summary Judgment

Summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)."Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment." Triumph Foods, LLC v. Campbell, 742 F. Supp. 3d 63, 69 (D. Mass. 2024) (citing Anderson, 477 U.S. at 248). In reviewing the evidence at the summary judgment stage, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." SEC v. Sharp, 692 F. Supp. 3d 9, 10 (D. Mass. 2023) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). "However, '[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Fernando

v. Fed. Ins. Co., No. 18-10504-MBB, 2022 U.S. Dist. LEXIS 44315, at *3 (D. Mass. Mar. 14, 2022) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (alterations in original)). If a properly supported motion for summary judgment is submitted, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The adverse party cannot "rest upon the mere allegations or denials of his pleading," but must instead "present affirmative evidence." Id. at 256–57.

### ii. Chapter 93A

Chapter 93A prohibits "'[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Valley Children's Hosp. v. Athenahealth, Inc., No. 22-cv-10689-DJC, 2023 WL 6065800 at *2 (D. Mass. Sept. 18, 2023) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005)); Mass. Gen. Laws ch. 93A, § 2(a) (alterations in original). Pursuant to her authority to implement regulations interpreting Chapter 93A, the Massachusetts Attorney General has stipulated that a debt collector commits an unfair and deceptive practice (and thereby violates § 2) by "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number." 940 CMR § 7.04(1)(f); Armata v. Target Corp., 99 N.E.3d 788, 790 (Mass. 2018). Section 9 of Chapter 93A creates a private cause of action for any consumer that "'has been injured' by an act or practice barred by section 2." Nightingale v. Nat'l Grid USA Serv. Co., 107 F.4th 1, 5 (1st Cir. 2024) (quoting Mass. Gen. Laws ch. 93A, § 9(1)).

To succeed on a Chapter 93A claim as a consumer under Section 9, a plaintiff "must show '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the

consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" <u>Gottlieb v. Amica Mut. Ins. Co.</u>, 57 F.4th 1, 10 (1st Cir. 2020)  (quoting <u>Tomasella v. Nestle USA Inc.</u>, 962 F.3d  60, 71 (1st. Cir. 2020)). There is "no 'per se' liability under section 9 of chapter 93A." <u>Nightingale</u>, 107 F.4th at 5 (citing <u>Tyler v. Michaels Stores, Inc.</u>, 984 N.E.2d 737, 746 (Mass. 2013)).   There must be "some loss beyond the mere fact that a violation occurred," <u>Gottlieb</u>, 57 F.4th at 10, and "a mere violation of section 2 does not automatically give rise to an actionable injury under section 9[,]" <u>Nightingale</u>, 107 F.4th at 5. The plaintiff must allege a "distinct injury or harm, either economic or non-economic, that arises from the claimed unfair or deceptive act itself." <u>Nightingale</u>, 107 F.4th at 5 (internal quotation marks omitted) (quoting <u>Tyler</u>, 984 N.E.2d at 746). "Section 9 encompasses economic injuries, as well as non-economic injuries like emotional distress." <u>Id.</u> (citing <u>Hershenow v. Enterprise Rent-A-Car Co. of Bos.</u>, 840 N.E.2d 526, 532-33, 533 n.16 (Mass. 2006)).

In <u>Nightingale v. Nat'l Grid USA Serv. Co.</u>, the First Circuit examined plaintiffs' burden in establishing a cognizable injury for Chapter 93A claim. 107 F.4th 1. The case involved similar facts to the case at hand – a debtor sued National Grid and its debt collectors for violating the same regulation that prohibits debt collection calls more than twice over a seven-day period. <u>Id.</u> at 3; 940 CMR § 7.04(1)(f). Nightingale "alleged that the calls invaded his privacy and caused him emotional distress. Nightingale also sought to certify a putative class of Massachusetts residents whose privacy had been invaded by similarly excessive calls on behalf of National Grid." <u>Nightingale</u>, 107 F.4th at 3. The District Court had granted summary judgment, holding,

> Nightingale (1) could not demonstrate an emotional distress injury under chapter 93A without satisfying the common-law elements of intentional infliction of emotional distress, and (2) could not demonstrate a privacy-related injury under chapter 93A without satisfying the common-law elements of intrusion upon seclusion. Finally, it held that no reasonable juror could conclude that Nightingale had satisfied the elements of either tort.

Id. at 4. On appeal, the First Circuit reversed. The court held that a debt collector violates Section 2 of Chapter 93A not when a debtor successfully *receives* a call, but rather when the debt collector *initiates* the call – even if that call goes unanswered and regardless of whether the caller leaves a message. Id. at 7–8. The Supreme Judicial Court ("SJC") has held that a debt collector "initiates" a communication "every time it attempts to contact a debtor's telephone to convey information." Armata v. Target Corp., 99 N.E.3d 788, 793 (Mass. 2018). The Nightingale court explained further:

> [T]here are many circumstances in which a collector can unlawfully "initiate" a call without causing an injury (i.e., receipt) under section 9. All that matters is that the debtor be "able to" receive the call, even if he ultimately does not. [Armata, 99 N.E.3d] at 793-94. For example, a caller could opt out of leaving a voicemail, even though it is possible to do so. Id. at 796 n.14 ("The Attorney General's guidance provides no exemption for those who voluntarily choose not to leave voicemail messages."). Or a caller could leave a voicemail that the debtor never listens to. In either case, the collector has still "initiated" an unlawful call. But the collector has not caused any injury, because the call was never received. The section 2 violation can therefore exist without a corresponding section 9 injury.

107 F.4th at 7-8. Accordingly, the court held that Nightingale had alleged "more than a per se theory of liability," and that the injuries he alleged – invasion of privacy and emotional distress – could serve as "both an element of a violation and a basis for seeking redress for that violation." Id. at 8.

The court next examined whether Nightingale's claimed injuries were cognizable under Section 9. First, the court held that even though Nightingale "ha[d] not shown an appreciable or significant invasion of privacy[,]" his "mere receipt of unwanted communications causes a cognizable privacy-related injury under section 9," because such receipt stemmed from a section 2 violation. Id. at 9. Like the plaintiff in Tyler v. Michaels Stores, Inc., "Nightingale's receipt of the calls was an 'invasion of [his] personal privacy causing injury or harm worth more than a

penny.'" Id. at 8 (quoting Tyler, 984 N.E.2d at 746 n.20) (alterations in original). The defendants argued that Nightingale had not alleged sufficient facts to support his claimed injury. Id. at 9. The court held that additional facts demonstrating the calls severely invaded plaintiff's privacy might enhance the size of his damages award, "not his entitlement to one in the first place." Id. Additional facts might make Nightingale eligible for actual damages, but at a minimum, he was entitled to nominal damages of $25. Id. This same reasoning carried into the court's analysis of Nightingale's emotional distress injury.

Regarding emotional distress, the Nightingale court held that "emotional injury is cognizable under chapter 93A even if it is not 'easily quantified' or corroborated by evidence other than the plaintiff's testimony." Id. at 10 (quoting Wilson v. Transworld Sys., Inc., No. 13-P-1455, 2014 Mass. App. Unpub. LEXIS 946, at *9 (Mass. App. Ct. Aug. 26, 2014)). The court discussed Chapter 93A emotional distress claims that are backed only by the plaintiff's testimony – without corroborating evidence, such as "physical harm" or "expert testimony"– and noted, "the provision for nominal damages of $25 recognizes that Chapter 93A damages will often be small and hard to measure." Id. at 10, 10 n.6. This Court interprets that language in Nightingale to mean that if a Plaintiff cannot substantiate a claim for actual emotional distress damages, they may still have a cognizable claim for nominal damages under Chapter 93A. See Hershenow, 840 N.E.2d at 533 n.18 ("The statutory damage provision . . . eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act."); Ciardi v. F. Hoffmann La Roche, Ltd., 762 N.E.2d 303, 314 n.20 (Mass. 2002) ("To the extent that the plaintiff is able to prevail on the issue of liability but is unable to prove actual damages, the Legislature has decided that she is entitled to a specified remedy."); Wilson, No. 13-P-1455, 2014 Mass. Unpub. LEXIS 946 , at *9-11.

Ultimately, the <u>Nightingale</u> court reversed the District Court's grant of summary judgment for the defendants because "Nightingale (1) did not advance an impermissible per se theory of injury under chapter 93A; (2) offered proof of cognizable privacy-related injuries under section 9 of chapter 93A; and (3) offered proof of cognizable emotional distress injuries under section 9 of chapter 93A." Nightingale, 107 F.4th at 10-11.[2]

### B.  <u>Discussion re: Summary Judgment</u>

RPM has conceded that the First Circuit's decision in <u>Nightingale</u> "may preclude this Court from entering summary judgment in RPM's favor on Plaintiff's emotional distress and invasion of privacy claims[,]" [ECF No. 133 at 3]; however, RPM asserts that Powers should be limited to only nominal, as opposed to actual, damages. As discussed below, the Court agrees.

First, Powers has alleged that RPM violated Chapter 93A § 2 when it initiated telephone communications with debtors "in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number," which is prohibited as unfair and deceptive conduct by 90 CMR § 704(1)(f). Second, <u>Nightingale</u> conclusively established that the types of injuries Powers alleges as a result of RPM's unfair and deceptive call practices are cognizable injuries under Section 9 of Chapter 93A. 107 F.4th at 7-8, 10. Third, Powers can satisfy the element of causation because she has alleged that her fear, anxiety, frustration, and anger all occurred after she received excessive calls from RPM. <u>See</u> <u>Wilson</u>, 2014 Mass. App. Unpub. LEXIS 946, at *9-11 (plaintiff's testimony that she felt "intimidated" by the collection caller was "sufficient to support a finding that each call [the plaintiff] received from [the defendant] . . . caused [the

---

[2] The <u>Nightingale</u> litigation also concerned the District Court's denial of class certification. That will be discussed in detail in this Order in the section on Plaintiff's motion for class certification, <u>infra</u>.

plaintiff] emotional distress.") Accordingly, Powers has met her burden as to all elements of her Chapter 93A claim. See Gottlieb, 57 F.4th at 10.

Although Powers has stated a cognizable claim under Chapter 93A, she has failed to demonstrate that she is entitled to anything more than nominal damages. Nightingale held that in cases where the evidence of invasion of privacy or emotional distress is minimal or difficult to measure, statutory nominal damages of $25 are appropriate. 107 F.4th at 7-8, 10. This holding reiterates prior holdings from Massachusetts courts. See Hershenow, 840 N.E.2d at 533 n.18; Ciardi, 762 N.E.2d at 314 n.20; Wilson, 2014 Mass. App. Unpub. LEXIS 946, at *9-11. Nightingale established that a plaintiff may state a cognizable claim for emotional distress under Chapter 93A based only on their own deposition testimony, and that other corroborating documentary or expert evidence is not required – at least for an award of nominal damages. 107 F.4th at 10, 10 n.6.

Here, Powers' testimony describes relatively minor invasions of privacy and emotional distress that are difficult to quantify and for which Powers has asserted no method of measuring. Regarding emotional distress, "an emotional injury must be 'measurable' before a plaintiff can receive actual damages, rather than a statutory nominal damages award of $25." Nightingale, 107 F.4th at 9 (quoting Tyler, 984 N.E.2d at 748 n.20).  It is undisputed that Powers does not possess any documents evidencing the existence of her emotional distress and she has never spoken with a health care provider regarding RPM causing her distress. [ECF No. 104-1 ¶ 15]. Powers does not dispute that she has not suffered any economic or monetary harm as a result of RPM's alleged conduct, such as medical costs for treatment of emotional distress. [Id. ¶ 19]. Further, Powers has other mental health challenges that could be affecting any distress caused by RPM. [Id. ¶ 16]. In some cases, the severity of a plaintiff's emotional distress may be a disputed factual issue best left

to a jury. <u>See, e.g.</u>, <u>Silva v. Town of Uxbridge</u>, 771 F. Supp. 3d 56, 76 (D. Mass. 2025); <u>Kaiser v. Kirchick</u>, 662 F. Supp. 3d 76, 104 (D. Mass. 2023).  However, in the cited cases, the plaintiffs had produced measurable evidence regarding their emotional distress. <u>Silva</u>, 771 F. Supp. 3d at 76 ("Silva has presented evidence that he suffered emotional trauma requiring mental health counseling."); <u>Kaiser</u>, 662 F. Supp. 3d  at 104 (Plaintiff "stated that he 'sought medical treatment' for these symptoms."). There is no dispute of fact that Powers has not submitted any measurable evidence of her emotional distress.

Moreover, regarding privacy-related injuries, Powers, like the plaintiff in <u>Nightingale</u>, has not alleged a severe invasion of privacy, especially considering that debtors have a reduced privacy interest under Massachusetts law. <u>107 F.4th</u> at 9 (citing <u>Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 567 N.E.2d 912, 915 n.6 (Mass. 1991)). Just like Nightingale, "if [Powers] could produce additional facts showing that the calls severely invaded [her] privacy, then [she] might be entitled to something more than nominal damages." <u>Id.</u> However, as the record stands, Powers has merely alleged injuries "worth more than a penny" that satisfy an award for nominal damages as opposed to actual damages. <u>Tyler</u>, 984 N.E.2d at 746 n.20. "The SJC has repeatedly referred to the $25 referenced in §9 as *nominal* damages, which a plaintiff may recover if he or she cannot prove actual damages of more than $25." <u>Aspinall v. Philip Morris Cos.</u>, No. SUCV1998-06002-BLS132, 2014 Mass. Super. LEXIS 26, at *29 (Mass. Super. Ct. Feb. 7, 2014) (citing <u>Herman v. Home Depot</u>, 763 N.E.2d 512, 513 (Mass. 2002) <u>and</u> <u>Jet Line Servs., Inc. v. Am. Emp'rs Ins. Co.</u>, 537 N.E.2d 107, 115 n.12 (Mass. 1989) ("nominal damages of $ 25 are awarded under § 9 if proof of greater damages is not made.")).

Further, as Powers has not shown actual damages, she is not entitled to treble damages of the statutory amount. <u>Leardi v. Brown</u>, 474 N.E.2d 1094, 1103 (1985) ("where no actual damages

were shown, the award must be in the amount of $ 25, and not a multiple thereof.") This respects the Legislature's intent: "[b]ecause the Legislature has determined that an award of $25 suffices as nominal damages, it would be incongruous and inconsistent with that determination to infer that in any circumstances the Legislature intended that the nominal sum should be multiplied." Aspinall, 2014 Mass. Super. LEXIS 26, at *30–31 (quoting Leardi, 474 N.E.2d at 1103). In further deference to legislative intent, Plaintiff shall be entitled to a single award of $25, not $25 per excessive call made by RPM. Id. at *31–32 ("While allowing damages of $25 for each transaction that might be found to violate the statute might provide even more deterrence of the proscribed conduct, a fair reading of Leardi suggests that this would not be consistent with the Legislature's intent[.] (citation omitted)). Additionally, should Powers successfully prosecute her class action, each class member would be eligible for an award of $25. Id. at *31 ("When class actions are successfully prosecuted, that $25 must be awarded to each class member.") Finally, as a prevailing party under Chapter 93A § 9(4), Powers will be eligible for reasonable attorney's fees and costs, to be determined at a later time. See Pizzo v. Gambee, 810 F. Supp. 2d 345, 347 (D. Mass. 2011).

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** RPM's motion for summary judgment, ECF No. 86. RPM's motion is **<u>DENIED</u>** as to the merits of Plaintiff's Chapter 93A claim, but **<u>GRANTED</u>** as to its request to limit Plaintiff's damages to nominal damages of $25. See Aspinall, 2014 Mass. Super. LEXIS 26, at *32 (limiting Plaintiffs' damages under Chapter 93A to nominal damages absent proof of actual damages exceeding $25).

### III.    MOTION FOR CLASS CERTIFICATION

The Court next turns to Powers' motion for class certification, ECF No. 81. Powers seeks to certify the following class:

All persons residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action,[3] Defendant initiated in-excess of two telephone communications within a seven-day period regarding a debt which was more than thirty-days past due to their residence, cellular telephone, or other provided telephone number.

### A. Relevant Facts

Plaintiff proposes using the Defendant's own records to ascertain and identify her class. [ECF No. 82 at 18]. RPM utilized a call dialing platform called LiveVox to call the consumers at issue in this case. [D. Expert Report, ECF No. 87-3 ¶ 15]. The LiveVox data includes a consumer's name, address, the date and time of a phone call with RPM, the consumer's phone number, and the "result" of the call. [Id. ¶ 17]. RPM also possesses consumer data through its collection management system, known as a "Pick System" that includes notes that reflect the activity that took place during the calls with consumers. [Id. ¶ 19]. Further, based on subsets of data produced in discovery, RPM knows the status of each consumer's debt, i.e. how long the debt has been held. [ECF No. 82 at 3]. As the regulation in question only applies to Massachusetts residents, RPM produced datasets of calls placed to consumers that reflected a Massachusetts address. [D. Expert Report. ¶ 16 (files included 6,849,468 unique calls, which encompassed 300,470 unique telephone numbers, and 177,135 unique consumer names)]. Based on a review of the subset of data that is relevant to the debt-collection regulation's criteria (Massachusetts debtors with debts alleged to be more than thirty days past due, who were called more than twice in a seven-day period, and where the call result was that the caller reached the person, or reached an answering machine and either hung up or left a message), Plaintiff estimated the number of affected telephone numbers to be a few hundred thousand less than the Defendant's expert's estimate of 300,470 unique telephone

---

[3] The operative filing date shall be September 18, 2018, when Powers filed her original Class Action Complaint in Worcester Superior Court. [ECF No. 82 at 2].

numbers for Massachusetts consumers overall.[4] To be clear, the individuals purported to be class members derives from that significantly smaller subset of the data, which is defined as "Massachusetts debtors whose debts Defendant attempted to collect between September 18, 2014 and September 18, 2018 where the debtor's debt(s) was alleged to be more than thirty days past due and where Defendant placed more than two collection calls to said debtor's telephone within a seven-day period." [ECF No. 82 at 5]. Accordingly, the parties already have a list of potential class members who are limited in part by the criteria for liability under the debt collection regulation, i.e, that the debtor lives in Massachusetts, that the debt is more than thirty days past due, and that RPM called the consumer more than twice in a seven-day period. See 90 CMR § 704(1)(f).

Defendant's expert, Jan Kostyun, identified several issues with RPM's call data, issues that RPM points to in opposing class certification. First, Kostyun states that the LiveVox call records cannot be used to reliably identify completed calls, or calls that otherwise satisfy Plaintiff's class definition. [D. Expert Report ¶ 21]. For example, Kostyun cross-referenced entries in the LiveVox data that purportedly represented completed calls[5] with the North American Numbering Plan Administration ("NANPA") database and found record entries where the call was reported as completed but the telephone number was not a working number at the time of the call. [Id. ¶ 27]. Out of 6,849,468 unique calls to Massachusetts consumers, Kostyun found "more than 1,000 calls" to non-working telephone numbers that the LiveVox data represented as completed calls. [Id. ¶

---

[4] The exact number of calls identified by the Plaintiff is under seal and can be found in ECF No. 90-1.

[5] "Completed" calls refers to calls placed by LiveVox that connected at the receiving end to either a live recipient or an answering machine. [D. Expert Report at 14].

43]. Kostyun extrapolates this small number to say that the result codes of *all* the LiveVox call records are unreliable. [Id.]

Additionally, Kostyun found multiple examples of consumer accounts that were associated with business, as opposed to residential phone numbers. [Id. ¶ 70-76]. There are no data values available in the LiveVox Calls that would identify called telephone numbers or debtors as being associated with a business versus residence, nor are there any designations available in RPM's pick system that might be used to identify business versus residential accounts. [Id. ¶ 76]. In light of this, Kostyun concluded that "determining which telephone numbers correspond to business accounts and which numbers correspond to residential accounts cannot be made without individualized investigation and analysis." [Id.]

Kostyun also asserts that "individualized investigation and analysis would be required to identify calls placed to debtors present or residing in Massachusetts because there is no way to guarantee that this address is where a call recipient was actually located when they received a call, nor where they were actually residing at the time of the call." [Id. ¶ 83]. Again, looking at all of the Massachusetts debtors rather than the subset of relevant calls, Kostyun noted that several thousand debtor names appear with multiple addresses or telephone numbers. [Id. ¶ 86]. Further, Kostyun argues that telephone area codes, particularly for wireless devices, are no longer reliable indicators of the location of a given telephone number when considering that it is common today for consumer cellular holders to maintain the same phone number over a long period of time, despite potential moves to other locales. [Id. ¶ 89]. Kostyun also identified debtors whose listed phone number was the main contact number for the Defendant, RPM, which he attributes to these calls being inbound calls from consumers to RPM. [Id. ¶ 45].

For her part, Powers counters that RPM's expert is overstating the scope of the issues he identified because he reviewed data for *all* Massachusetts consumers in RPM's records rather than the significantly smaller subset of "Massachusetts debtors whose debts Defendant attempted to collect between September 18, 2014 and September 18, 2018 where the debtor's debt(s) was alleged to be more than thirty days past due and where Defendant placed more than two collection calls to said debtor's telephone within a seven-day period." [ECF No. 82 at 5]. In reviewing the data for telephone numbers linked to businesses, Kostyun himself indicated that "[t]he search process that I performed was not intended to represent a statistically significant sample for the purposes of extrapolation to the entire class, but rather to demonstrate that a significant number of business identifications can be found." [D. Expert Report ¶ 73]. Regarding the calls to telephone numbers associated with a business, Powers argues that those calls are actionable even if the numbers as associated with a business because the regulation prohibits excessive calls to "the debtor's residence, cellular telephone, *or other telephone number provided by the debtor* as his or her personal telephone number." 940 CMR 7.04(f)(1). Powers asserts, "[n]othing therein excludes a number merely because it could also be associated with a 'business,'" and points out that some phone numbers could have dual status and be both associated with a business and provided by a consumer as the telephone number for their personal use. [ECF No. 107 at 10].

Regarding the purported "inbound" calls where the telephone number listed was the telephone number for RPM, Plaintiff asserts that these calls are likely transfers within the system. [Id. at 11]. Additionally, Powers notes that Kostyun identified only 101 calls out of *all* Massachusetts debtors, and not a single call in the smaller subset of Power's proposed class data, where this was an issue. [Id. at 12]. Further, as RPM knows its own phone number, "[i]dentifying

16

and removing calls to such a number from a spreadsheet is a standard and simple administrative task." [Id. at 11].

Regarding Kostyun's arguments that there is no reliable way to conclude from the data that the consumers listed are indeed Massachusetts residents, Powers points out that the data is specifically limited to people in Massachusetts. [Id. at 12]. Powers also highlights, "Defendant's expert did not identify a single person in the Call Data (let alone the narrower class Plaintiff seeks to represent) who was a resident of another state." [Id. at 12]. Overall, Powers argues that Kostyun's objections that some class members may not be residents or in Massachusetts is no more than "speculation" and "speculation is insufficient to defeat predominance in light of the Defendant's own representations and testimony that the Call Data consisted of persons in and residing in Massachusetts." [Id. at 12–13 (citing Cox v. Spirit Airlines, Inc., No. 17-CV-5172(EK)(VMS), 2023 U.S. Dist. LEXIS 24904, at *9 (E.D.N.Y. Feb. 14, 2023) ("the law is clear that a defendant must offer something more than speculation to defeat class certification." (citation omitted)); Del Valle v. Global Exchange Vacation Club, 320 F.R.D. 50, 61 (C.D. Cal., 2017) ("Defendants' speculation that customers may have given their consent to receive telemarketing calls . . . is not sufficient to defeat class certification -- especially where Plaintiff has offered persuasive evidence that [defendants do] not obtain express consent")].

## B. **Legal Standard**

Federal Rule of Civil Procedure 23 outlines the requirements for class certification. Gonzalez v. XPO Last Mile, Inc., 579 F. Supp. 3d 252, 259 (D. Mass. 2022) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 346 (2011)). Fed. R. Civ. P. 23. Rule 23(a) "requires that '(1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative representation of the class be adequate.'"

Id. (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008)). In addition to Rule 23(a) requirements, a plaintiff seeking class certification must demonstrate one of the three grounds for certification under Rule 23(b). Ortiz v. Saba Univ. Sch. of Med., 348 F.R.D. 4, 10 (D. Mass. 2024) (citations omitted). One such ground, predominance, "requires that common questions 'predominate' over individual questions, and that a class action be a 'superior' method of adjudicating the controversy." Gonzalez, 579 F. Supp. 3d at 259 (citing Wal-Mart, 564 U.S. at 346).

Once plaintiffs have met their initial burden, "'defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing.'" Ortiz, 348 F.R.D. at 10 (quoting In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015)).  In order for a court to certify a class, a plaintiff must "affirmatively demonstrate" through "a preponderance of the evidence" that the elements of Rule 23 are met. Gonzalez, 579 F. Supp. 3d at 259 (citing Wal-Mart Stores, 564 U.S. at 350; In re Nexium, 777 F.3d at 27). Because "rigorous analysis" is necessary when testing a plaintiff's assertions, the court may also have to consider the merits, which may require the court to "test disputed premises" and "formulate some predication as to how specific issues will play out[.]" Gonzalez, 579 F. Supp. 3d at 259 (citations omitted).

## IV.    DISCUSSION re: Class Certification

RPM raises several arguments in opposition to class certification, but, due to the Court's summary judgment decision in this case and the First Circuit's decision in Nightingale, none of RPM's arguments are availing. For example, RPM argues that Plaintiff could not show commonality or predominance because she could not show that RPM caused class-wide "separate and distinct, cognizable injuries required under Chapter 93A." [ECF No. 100 at 2]. As stated supra, Nightingale conclusively established that the types of injuries Powers alleges as a result of RPM's

unfair and deceptive call practices are cognizable injuries under Section 9 of Chapter 93A. 107 F.4th at 7-8, 10. RPM also argues that Powers could not establish commonality, predominance, or superiority because she was seeking actual damages, and she had offered no "administratively feasible method to adjudicate . . . individual issues[,]" such as causation and extent of damages for the rest of the class. [ECF No. 100 at 2]. The Court has just ruled that Powers' claim shall be limited to nominal damages of $25, as opposed to actual damages. As will be discussed below, the Court can tailor a class definition, and, here, the class shall only include individuals seeking nominal damages. Therefore, RPM's arguments that (1) Powers is an inadequate representative because her damages may be different than other class members, or (2) that the actual damages would require too much individual adjudication, no longer carry weight. [See id.] Finally, RPM brings expert evidence to argue that issues with the Call Data require too much individual analysis to ascertain a class such that "individual litigation supersedes classwide resolution." [Id.; ECF No. 87-3]. The Court takes up that argument below, and for the reasons stated therein, finds that Plaintiff has satisfied all necessary requirements for class certification pursuant to Rule 23.[6]

**A.      Class Definition**

Powers has submitted a proposed class definition; however, the Court is not bound to accept Plaintiff's exact definition and may, in an exercise of discretion, "revise a proposed class definition to avoid" legal issues with the proposed definition. Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 74 (D. Me. 2010) (citing cases and tailoring proposed definition to avoid creating

---

[6] RPM advanced an additional argument that Plaintiff's motion for class certification was untimely filed because it was filed less than 90 minutes after 6:00pm. [ECF No. 100 at 3]. The First Circuit has stated that "[t]o ensure the fair and prompt adjudication of cases, a district court must be able to manage its docket effectively and efficiently" and district courts are afforded "a wide margin of discretion in the performance of their case-management functions." Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 3 (1st Cir. 2023). The Court exercises its discretion to find that Plaintiff's motion is not untimely.

a "fail-safe class"); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). In the summary judgment section of this Order, the Court limited Powers' recovery to nominal damages as she has provided no basis for measurable actual damages. In arguments made prior to this decision, RPM consistently objects to class certification due to differences between Plaintiff's claimed injuries/damages and those of proposed class members. For example, RPM argues that gauging the severity of any given class member's invasion of privacy or emotional distress would require too much individualized adjudication such that individual issues would predominate over common ones. To avoid the potentially complicated adjudication of individual actual damages and to match the class membership to the claims that Powers actually represents, the Court amends Powers' class definition as follows:

> All persons residing in the Commonwealth of Massachusetts who, (1) *between September 18, 2014 and September 18, 2018*, Defendant initiated in-excess of two telephone communications within a seven-day period regarding a debt which was more than thirty-days past due to their residence, cellular telephone, or other provided telephone number; and who (2) *do not seek to prove actual damages.*

Class definitions are routinely broken into subclasses based on the type of remedy the plaintiffs seek. See, e.g., Diggs v. Mici, No. 22-40003-MRG, 2024 U.S. Dist. LEXIS 181072, at *5 (D. Mass. Sep. 30, 2024) (creating subclasses based on whether the class members sought injunctive relief or damages). Here, the Court elects to create a narrower class rather than certify a broad class then create subclasses for those seeking actual damages for either invasion of privacy or emotional distress. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 60 (1st Cir. 2013) ("the district court has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses." (citation omitted)). Further, in amending the proposed definition by the relief sought, the Court

was cognizant to avoid creating a "fail-safe" class, which is created when the class definition is "circular [in a way] that determines the scope of the class only once it is decided that a class member was actually wronged." Kamar v. Radio Shack Corp., 375 F. App'x 734, 736 (9th Cir. 2010).[7] Additionally, the Court's limitation of the class to only those who do not seek actual damages is based on factual questions, not a legal determination. See Campbell, 269 F.R.D. at 74 ("In approving a proposed class definition, the Court must ensure that eligibility as a class member . . . is not dependent upon a legal conclusion." (internal quotation marks and citation omitted)). Accordingly, this class definition preserves RPM's protection against liability if a class member was not legally wronged.

The Court now turns to analyzing how Plaintiff has met her burden on the requirements for class certification.

### B.    Ascertainability

Before addressing Rule 23(a) and (b) requirements, "the Court must determine if the class is ascertainable." Schonton v. MPA Granada Highlands LLC, No. 16-cv-12151-DJC, 2019 U.S. Dist. LEXIS 56502, at *7 (D. Mass. Apr. 2, 2019). Ascertainability is "not explicitly mentioned in Rule 23," but is an "implicit prerequisite[,]" requiring that a class be "'administratively feasible to determine whether a particular individual is a member.'" Id. at *7–8 (quoting Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000)). At the outset of the case, a court must be able to determine the proposed class using "stable and objective factors[.]" Id. (quoting Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000)) (internal quotation marks omitted). Although "not every class member must be identified . . . the class must be sufficiently

---

[7] An example of a "fail-safe" class definition would be something like, "all people harmed by the defendant's negligence." This definition is problematic because it precludes membership in the class unless the liability of the defendant is established.

ascertainable to permit a court to decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." Id. A class is not objectively ascertainable if it is based on "non-specific matters, such as 'wrongful conduct,' or subjective factors, such as 'a reasonable time[.]'" Carrier v. Am. Bankers Life Assur. Co. of Fla., No. 05-CV-430-JD, 2008 WL 312657, at *4 (D.N.H. Feb. 1, 2008) (quoting Crosby v. Soc. Sec. Admin. Of the U.S., 796 F.2d 576, 580(1st Cir. 1986)). While extensive, manual, individual assessment of data may undermine ascertainability, Nightingale v. Nat'l Grid USA Serv. Co, 766 F. Supp. 3d 231, 235-37 (D. Mass. 2025),  a class does not have to be automatically identifiable or derived from a perfect preexisting data set. Indeed, the Federal Rules of Civil Procedure expressly contemplate that "reasonable effort" may be required to identify and provide notice to all class members.  Fed. R. Civ. P. 23(c)(2)(B). Finally, "[a] defendant's failure to maintain adequate records is not a legitimate basis for denying certification." Thrower v. Citizens Disability, LLC, No. 20-10285-GAO, 2022 U.S. Dist. LEXIS 155803, at *6 (D. Mass. Aug. 30, 2022) (citing Birchmeier v. Caribbean Cruise Line, Inc., 302 F.R.D. 240, 250 (N.D. Ill. 2014)).

RPM raises several arguments against predominance which that the Court believes are more properly directed towards the ascertainability of the class because, in its opposition, RPM challenges whether the class can be identified by "stable and objective factors." Schonton, 2019 U.S. Dist. LEXIS 56502 at *8 (citation omitted). The bulk of RPM's arguments derive from the issues its expert reported in his overview of the Call Data, which the Court summarized above. In essence, Kostyun asserts that the LiveVox records are not reliable, and determining which consumers lived in Massachusetts, which calls were inbound from the consumer, or which phone numbers are linked only to a business would require "individualized investigation and analysis" of the Call Data. [ECF No. 100 at 14].

Here, the Court sides with the Plaintiff. RPM's call data may be imperfect, but it is complete enough to identify class members that fall within the criteria of the debt collection regulation. Again, out of the overall data for Massachusetts consumers, the parties have already created a significantly smaller subset of the data, which is defined as "Massachusetts debtors whose debts Defendant attempted to collect between September 18, 2014 and September 18, 2018 where the debtor's debt(s) was alleged to be more than thirty days past due and where Defendant placed more than two collection calls to said debtor's telephone within a seven-day period." [ECF No. 82 at 5]. The Call Data contains fixed data points including the address of the consumer, the status of their debt, how many calls RPM placed to the phone number provided by the consumer and when those calls were made, as well as the result of those calls. "[A] plaintiff need not identify every class member prior to certification," instead, "the Court must be able to discern whether class members are included or excluded from the class 'by reference to objective criteria.'" Nightingale v. Nat'l Grid USA Serv. Co., 766 F. Supp. 3d 231, 236 (D. Mass. 2025) (quoting Loughlin v. Vi-Jon, LLC, 728 F. Supp. 3d 163, 179 (D. Mass. 2024). The data in the spreadsheets provide this "objective criteria." See id.

Moreover, the fact that there are some issues with RPM's call data does not defeat class certification here. Kostyun did not limit his analysis to the smaller, relevant sample, and the Court finds his concerns relating to the overall data overstate the scope of any issues. The Federal Rules of Civil Procedure specifically note that "reasonable effort" may be required to identify and provide notice to all class members. Fed. R. Civ. P. 23(c)(2)(B). RPM's expert report has already done substantial leg work in identifying issues with the data and developing methods for sorting through the data to eliminate consumers who should not be included in the class. As Plaintiff

notes, "[i]dentifying and removing calls [that should not be included] from a spreadsheet is a standard and simple administrative task." [ECF No. 107 at 11].

Once again, this Court turns to the Nightingale litigation for clarity. On remand from the First Circuit, the District Court in Nightingale declined to certify a class because there were numerous issues with the defendant's data which would have required intensive, manual, individualized review. Nightingale v. Nat'l Grid USA Serv. Co., 766 F. Supp. 3d 231, 235-37 (D. Mass. 2025). However, the Call Data in this case is not plagued by the same deficiencies as the data in Nightingale. For example, in Nightingale, the call data was not limited solely to Massachusetts addresses, did not include the status of the debt as being thirty days past due, and included some inbound calls that could not be sorted out based on the defendant's data. Id.

The Nightingale court additionally cited the inclusion of some phone numbers associated with businesses as problematic for class certification; however, this Court does not see the same obstacle, as the phone numbers listed are those "provided by the debtor as his or her personal telephone number." 940 CMR § 7.04(1)(f). The fact that an individual consumer has a phone number listed that is also associated with a business should not bar their inclusion in a class because the phone numbers in RPM's data were provided by the debtor. Additionally, Defendant's expert has already identified RPM's own phone number and the phone number for the Social Security Administration as records that should not be included, and sorting those out is a simple administrative task, given the numbers are known to RPM. Regarding any other business-associated numbers, some review of the records may be required, but RPM has not established that phone numbers solely associated with businesses as opposed to natural persons are a widespread issue in the relevant subset of the data.

24

Likewise, the Court does not credit RPM's speculative argument that the consumers with Massachusetts addresses do not reside in Massachusetts. Kostyun failed to identify a single record in the relevant subset of data where this is an issue. If a consumer provided a Massachusetts address as the location of their residence, then Plaintiff should be able to rely on that criterion to ascertain class members. Further, the regulation at issue expressly stipulates that "a creditor may treat any billing address of the debtor as his or her place of residence," 940 C.M.R. § 7.04(1)(f), thus recognizing that a debtor may use an address different than their actual residence for billing and that a debtor may provide more than one viable address. This case is distinguishable from Nightingale on the issue of whether a debtor resides in Massachusetts because in Nightingale, the data was not limited to Massachusetts addresses and the plaintiff had conceded that the data included non-Massachusetts residents. Nightingale v. Nat'l Grid USA Serv. Co., 766 F. Supp. 3d 231, 236 (D. Mass. 2025).

Nightingale acknowledged that any single difficulty in establishing the putative class cited above "might not prevent certification" on its own, and the court's decision to deny certification rested on the "cumulative effect" of the problems with defendant's data. Id. at 237. Here, there are fewer issues with the data and RPM has only speculatively asserted that the issues are widespread. Indeed, several courts have certified classes despite issues with defendants' business records. See, e.g., Grubb v. Green Tree Servicing, LLC, No. CV 13-07421 (FLW), 2017 WL 3191521, at *18 (D.N.J. July 27, 2017) (certifying class even though percent of class contained persons who were not residents of the state); Thrower, 2022 U.S. Dist. LEXIS 155803, at *2 (certifying class despite issues in business record accuracy).

Finally, the Court is mindful of the Federal Rules' mandate to construe the rules in the interest of justice, see Fed. R. Civ. P. 1, and declines to reward RPM for keeping flawed data.

Declining to certify the class based solely on issues with the Defendant's data would "create an incentive for a person to violate [consumer protection regulations] on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct." Birchmeier, 302 F.R.D. at 250. As another session of this Court has declared, "[a] defendant's failure to maintain adequate records is not a legitimate basis for denying certification." Thrower, 2022 U.S. Dist. LEXIS 155803, at *6 (citing Birchmeier, 302 F.R.D. at 250). Further, it would be inappropriate and unnecessary to deny class certification based on mere manageability grounds. Yaffe v. Powers, 454 F.2d 1362, 1365 (1st Cir. 1972), abrogated on other grounds by Gardner v. Westinghouse Broad. Co., 437 U.S. 478 (1978) ("for a court to refuse to certify a class . . . because of vaguely-perceived management problems . . . discount[s] too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise"); In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig., 78 F.R.D. 622, 628 (W.D. Wa. 1978) ("dismissals for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule.") (internal quotation marks and citation omitted). RPM's call data provides a sufficient basis to ascertain Powers' proposed class and the limited individualized review that may be required is not outside the bounds of "reasonable effort" contemplated by the Federal Rules. See Fed. R. Civ. P. 23(c)(2).

The Court next turns to analyzing whether Plaintiff has met her burden in establishing the other requirements of Rule 23.

## C.    Numerosity

Numerosity is a "low threshold[,]" that requires a proposed class to "be so numerous that joinder of all members is impracticable." Gonzalez, 579 F. Supp. 3d at 259 (quoting Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009)); Fed. R. Civ. P. 23. Classes as small as 40

"have been found be sufficiently numerous under Rule 23(a)(1)." DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 98 (D. Mass. 2010); Garcia-Rubiera, 570 F.3d at 460. Here, Plaintiff easily meets the "low threshold" of numerosity due to the large number[8] of potential class members derived from the Call Data.

### D.    **Commonality**

To establish commonality, a plaintiff must show that there are "questions of law or fact common to the class." Gonzalez, 579 F. Supp. 3d at 259. The proposed class's claims must "'depend upon a common contention,' the resolution of which is 'central to the validity' of each of the class's claims." Id. (citing Wal-Mart, 564 U.S. at 350; Parent/Professional Advocacy League v. City of Springfield, 934 F.3d 13, 28–29 (1st Cir. 2019)). The commonality requirement has been described as a "low bar." Gonzalez, 579 F. Supp. 3d at 259 (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008)). The Supreme Court has stipulated that "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 564 U.S. at 359 (internal quotation marks and citation omitted).

Here, Powers raises two questions of law and fact common to the class members:

(1) Whether Defendant violated M.G.L. c. 93A and 940 CMR § 7.04(1)(f) by placing in excess of two debt collection calls per debt per seven-day period; and

(2) Whether Defendant willfully and knowingly placed in excess of two debt collection calls per debt per seven-day period.

[ECF No. 1-1 ¶ 25].

RPM asserts that Plaintiff has not satisfied the commonality requirement because raising common questions regarding whether Defendant has engaged in unfair or deceptive practices is

---

[8] The exact number is filed under seal in ECF No. 90 at 13.

not enough. [ECF No. 100 at 8]. Defendant argues that when causation and injury are contested, these common questions do not elicit common answers. [Id.]  In arguments made prior to the Nightingale First Circuit decision, Defendant asserts that the common questions presented here do not seek to establish if RPM was the cause of both Plaintiff's and the proposed class's alleged injuries, or whether an injury actually exists [Id. at 9].

First, regarding Plaintiff's second question alleging that RPM has committed willful and knowing violations of Chapter 93A, the Court finds this question is no longer relevant because Plaintiff will not be able to treble her damages. Because Plaintiff has not shown actual harm and is limited to nominal damages, the provision of Chapter 93A allowing for double or treble damages for "willful or knowing violations" of the statute does not apply. See Leardi, 474 N.E.2d at 1103 ("where no actual damages were shown, the award must be in the amount of $ 25, and not a multiple thereof."); Mass. Gen. Laws ch. 93A, § 9(3). Accordingly, Plaintiff's second "common" question is no longer viable.

On the other hand, Powers meets her burden on commonality with the first question she raised. Only one common question is required, Wal-Mart, 564 U.S. at 359 (citation omitted), and the question posed by Plaintiff is directly on point to the allegations of this case. RPM's arguments about establishing injury and causation are no longer relevant in light of the First Circuit's decision in Nightingale, which clarified that Plaintiff's injuries are cognizable. 107 F.4th at 7-8, 10. Nightingale also established that a debt collector violates Section 2 of Chapter 93A not when a debtor successfully *receives* a call, but rather when the debt collector *initiates* the call – even if that call goes unanswered and regardless of whether the caller leaves a message. 107 F.4th at 7-8. Therefore, the question of causation is also easily answered by the Defendant's Call Data, as the

data indicates the results of any given call. Accordingly, the proposed class raises a common question sufficient to satisfy the requirement of Rule 23.

### E.    Typicality

Typicality requires that the claims of the representative party be typical of the claims of the proposed class, meaning that they must "'arise out of the same events or course of conduct' as the injuries of the class, and the representative plaintiff's claims must be 'based on the same legal theory' as the claims of the class." Gonzalez, 579 F. Supp. 3d at 262 (quoting In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008)). The Rule 23(a)(3) requirement of typicality is "not highly demanding because the claims only need to share the same essential characteristics, and need not be identical." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D. Mass. 2003).

Plaintiff has satisfied the typicality requirement because she and the proposed class members all share the same baseline injury: RPM initiated in excess of two communications by telephone in a seven-day period to them regarding a debt which was more than thirty-days past due. [ECF No. 82 at 14]. Plaintiff's and the proposed class members' claims arise from RPM's same course of conduct, i.e. its use of telephone systems and its failure to block excessive calls. [Id.] Additionally, as with proposed class members, Plaintiff seeks damages under Chapter 93A, §§ 2, 9 and 940 C.M.R. 7.04(1)(f). [Id.] Thus, typicality is satisfied.

### F.    Adequacy

The fourth element of Rule 23(a) requires that "the representative parties fairly and adequately protect the interests of the class." Gonzalez, 579 F. Supp. 3d at 262. A named plaintiff must be representative of the class, which can include "assert[ing] claims typical of those of the class, claiming similar injuries, suffered during the same period and arising from the same

conduct." In re Relafen Antitrust Litig., 218 F.R.D. 337, 343 (D. Mass. 2003). The purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997). A plaintiff "must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Defendant challenges the adequacy of Plaintiff as a class representative, arguing that her nominal damages claim will foreclose other class members' claims for actual damages. [ECF No. 100 at 17–18]. The answer here is quite simple. The Court will limit the class definition to only include individuals who are not seeking actual damages. Accordingly, Powers' interests are exactly aligned with the proposed class, and the Court finds she satisfies adequacy. Additionally, her attorney is qualified and experienced in consumer rights litigation of this nature, [Taylor Decl., ECF No. 82-1], and the Court is satisfied that he will adequately represent the class.

## G.    Rule 23(b)(3) Certification Requirements

As Plaintiff has established that the proposed class is ascertainable and that the requirements of Rule 23(a) are satisfied, the Court next turns to the requirements of Rule 23(b)(3). See Thrower, 2022 U.S. Dist. LEXIS 155803, at *9. Under Rule 23(b)(3), class certification is appropriate if plaintiff demonstrates that common issues predominate over individual issues and that a class action is the superior method for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3). For the reasons stated below, Powers has met her burden as to both issues.

### a.    Predominance

To establish predominance under Rule 23(b)(3), a plaintiff "must demonstrate that the proposed class is sufficiently cohesive to warrant adjudication by representation." Abla v. Brinker Rest. Corp., 279 F.R.D. 51, 57 (D. Mass. 2011) (quoting Overka v. American Airlines, 265 F.R.D. 14, 19 (D. Mass. 2010)) (internal quotation marks omitted). This element of Rule 23(b) "requires that common questions 'predominate' over individual questions." Gonzalez v. XPO Last Mile, Inc., 579 F. Supp. 3d 252, 259 (D. Mass. 2022) (quoting In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008)). While the predominance inquiry of Rule 23(b)(3) is "'far more demanding' than Rule 23(a)'s commonality requirement, it does not require that zero individual issues exist." Thrower, 2022 U.S. Dist. LEXIS 155803, at *10 (quoting Amchem, 521 U.S. at 624).  The goal of the predominance inquiry is to parse out whether dissimilarity among the claims of class members can be addressed "in a manner that is not 'inefficient or unfair.'" Gonzalez, 579 F. Supp. 3d at 262 (quoting In re Asacol Antitrust Litig., 907 F.3d 42, 51 (1st Cir. 2018)). Inefficiency relates to the "administrative burdens associated with deciding complex questions on a plaintiff-by-plaintiff basis, such as conducting individualized evidentiary hearings." Thrower, 2022 U.S. Dist. LEXIS 155803, at *10 (citing In re Asacol, 907 F.3d at 51–52). Unfairness refers to the defendant's Seventh Amendment and due process rights "to effectively contest the eligibility of potential class members." Id. at *10–11 (citing In re Asacol, 907 F.3d at 51–52). "Individualized factual determinations do not create inefficiency or unfairness if they can be made pursuant to rote, mechanical processes." Id. at *11 (citing Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003)). Moreover, the Court may not "rely on mere speculation that individual issues may arise." Gonzalez, 579 F. Supp. 3d at 262 (quoting Bais Yaakov of Spring Valley v. ACT, Inc., 12 F.4th 81, 89 (1st Cir. 2021)).

RPM's arguments in opposition to predominance are either moot in light of <u>Nightingale</u> or addressable through reasonable effort. RPM argues that Plaintiff cannot meet predominance because she cannot establish that common questions predominate over individual ones and that factual inquiries relating to class members' injuries will require individual determination that is both inefficient and unfair. [ECF No. 100 at 13–14]. As discussed with commonality, the First Circuit's <u>Nightingale</u> decision mooted RPM's arguments that individualized inquiry would be required to establish whether each class member had sustained an invasion of privacy. <u>See</u> Commonality discussion, <u>supra</u>. Additionally, <u>Nightingale</u> established that Powers' injuries of invasion of privacy and emotional distress are cognizable and can be remedied with an award of nominal damages absent evidence of measurable actual damages. 107 F.4th at 7-8, 10. Further, in limiting Powers' claim and the class definition to nominal damages, the Court has neutralized any individualized determination regarding severity of any class member's injuries and rejects RPM's arguments that such determinations would be required here. As stated previously, <u>Nightingale</u> also established that a debt collector violates Section 2 of Chapter 93A not when a debtor successfully *receives* a call, but rather when the debt collector *initiates* the call – even if that call goes unanswered and regardless of whether the caller leaves a message. 107 F.4th at 7-8. RPM's Call Data provides answers that include the results of each call *initiated* by RPM, and no individualized determination is required to determine whether a debtor actually received a call as receipt of the call is irrelevant to causation.

In this case, there is only one claim at issue – a violation of Chapter 93A – and liability as to each putative class member depends on: (1) whether the debtor is a natural person; (2) whether the individual owed a debt that was alleged to be more than thirty days past due; (3) whether RPM initiated a call to the individual to collect the debt more than twice within a seven-day period; (4)

whether the individual's residential address or billing address on file was a Massachusetts address at the time of the call; and, (5) whether the calls were made within the statutory limitations period. These questions track the requirements of the regulation at issue. See 940 C.M.R § 7.04(1)(f). Common issues predominate because each of those five questions "can be addressed either on a class-wide basis, or in an individualized manner that is neither inefficient nor unfair." See Thrower, 2022 U.S. Dist. LEXIS 155803, at *11.

The majority of these questions can be answered using RPM's internal Call Data. As discussed at length in the section on Ascertainability, supra, the Call Data contains objective criteria and records that can be sorted to satisfy questions 2-5 above. Indeed, that sorting has already occurred as a subset of data was produced in discovery that is limited to "Massachusetts debtors whose debts Defendant attempted to collect between September 18, 2014 and September 18, 2018 where the debtor's debt(s) was alleged to be more than thirty days past due and where Defendant placed more than two collection calls to said debtor's telephone within a seven-day period." [ECF No. 82 at 5]. While some individualized inquiry may be required to sort out business accounts from personal debtors or potential inbound calls, the process is aided by "computer records, clerical assistance, and objective criteria" in the Call Data and an evidentiary hearing on each claim would not be required. See Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003).

Where, like here, "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important maters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Gonzalez, 579 F. Supp. 3d at 263 (citation omitted). The Court addressed RPM's concerns with its own Call Data in the

Ascertainability section and reiterates "[a] defendant's failure to maintain adequate records is not a legitimate basis for denying certification." <u>Thrower</u>, 2022 U.S. Dist. LEXIS 155803, at *6 (citing <u>Birchmeier</u>, 302 F.R.D. at 250). RPM can utilize its expert report to streamline the review process, and may contest the inclusion of given class members by moving for decertification should it discover that there are a substantial number of purported class members who do not meet the criteria of the class definition.[9] The First Circuit has held that "'class certification is permissible even if the class includes a de minimis number of uninjured parties." <u>Tassinari</u>, 349 F.R.D. at 30 (quoting <u>In re Nexium Antitrust Litig.</u>, 777 F.3d 9, 14 (1st Cir. 2015)). As it stands, RPM's expert did not review every record in the Call Data, did not create a representative sample, and did not limit his review to only the relevant records. [<u>See</u> D. Expert Report] The Court may not deny class certification upon "mere speculation that individual issues may arise." <u>Gonzalez</u>, 579 F. Supp. 3d at 262 (citation omitted).  RPM's Call Data was accurate enough for the company to rely on it in violating the debt collection regulation, as Plaintiff credibly alleges. Accordingly, the Court finds RPM's Call Data reliable enough as a starting point to hold the Defendant accountable for its actions.

**H.    <u>Superiority</u>**

---

[9] As stated previously, under Federal Rule of Civil Procedure 23, "[a]n order that grants or denies class certification  may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Decertification may be justified by post-certification developments such as the discovery of new facts or changes in the parties or in the substantive or procedural law." <u>In re Intuniv Antitrust Litig.</u>, No. 1:16-cv-12653-ADB, 2020 U.S. Dist. LEXIS 119289, at *8-9 (D. Mass. July 8, 2020) (internal quotation marks omitted) (quoting <u>Donovan v. Philip Morris USA, Inc.</u>, No. 06-cv-12234, 2012 U.S. Dist. LEXIS 37974, at *14–15 (D. Mass. Mar. 21, 2012)).

Finally, Rule 23(b)(3) requires class certification to be "superior to other available methods for adjudicating the controversy." <u>Gonzalez</u>, 579 F. Supp. 3d at 265. Superiority is satisfied when it is "seriously questionable that putative class members could litigate on their own." <u>Id.</u> (citing <u>Gintis v. Bouchard Transp. Co., Inc.</u>, 596 F.3d 64, 67–68 (1st Cir. 2010)).

RPM asserts that Powers fails to prove superiority for three primary reasons: (1) because individual class members have a sufficient interest in engaging in individual proceedings to pursue damages beyond that which would be recovered under Plaintiff's proposed Chapter 93A violation; (2) it is likely that difficulties will arise in adjudicating individual class member's issues regarding causation and injury; and (3) issues with the Call Data lack an automated way to determine causation and/or injury such that individual litigation supersedes class wide resolution. [ECF No. 100 at 2].

The Court finds RPM's arguments unavailing. As mentioned, this class action will be limited to recovery of nominal damages. Therefore, RPM's arguments about individual damages and determination of causation and injury do not carry weight. The class will not include persons seeking actual damages in excess of $25 and any such person would have to pursue their claims in a separate action. The Court has discussed RPM's arguments about the Call Data at length and reiterates that class certification does not require that there be a fully automated way to determine causation/injury. While ascertaining the class may require reasonable effort, the Court declines to deny class certification simply because the Defendant's own records are imperfect.

For her part, Powers primarily argues that a class resolution is superior to individual adjudication because these claims involve a low statutory penalty and it is neither economically feasible, nor judicially efficient for the many thousands of class members to pursue their claims on an individual basis. [ECF No. 82 at 17]. The Court agrees. As noted by Powers, this action

presents exactly the type of claim well suited for class resolution because it permits "the plaintiffs to pool claims which would be uneconomical to litigate individually." <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985). Additionally, as discussed with commonality and predominance, the class members share common questions and issues in their claims and adjudicating them together is most efficient and economic approach. Moreover, the First Circuit has stated, "the core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." <u>Smilow v. Sw. Bell Mobile Sys.</u>, 323 F.3d 32, 41 (1st Cir. 2003). In line with this purpose, the Court finds Plaintiff has met her burden on superiority.

Having determined that Powers has satisfied the requirements of Rule 23 and ascertainability, the Court **<u>GRANTS IN PART</u>** Plaintiff's Motion for Class Certification, ECF No. 81 – with amendments to the class definition. If later evidence or case developments demonstrate an impasse in the notification and class creation process or that a widespread affirmative defense is likely to bar some class members' claims, the Court "can at that stage modify or decertify the class. . . or use a variety of management devices." <u>Smilow</u>, 323 F.3d at 41 (citations omitted); <u>see</u> <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."); <u>Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/Mastermoney Antitrust Litig.)</u>, 280 F.3d 124, 141 (2d Cir. 2001) (describing procedural options and collecting authorities).

### V.    <u>CONCLUSION</u>

For the reasons stated above:

1. The Court **<u>GRANTS IN PART AND DENIES IN PART</u>** RPM's Motion for Summary Judgment, ECF No. 86. RPM's motion is **<u>DENIED</u>** as to the merits of

Plaintiff's Chapter 93A claim, but **<u>GRANTED</u>** as to its request to limit Plaintiff's damages to nominal damages of $25.

2. The Court **<u>GRANTS IN PART</u>** Powers' Motion to Certify Class, ECF No. 81. The Court will certify the following class, amending Powers' class definition in accordance with the foregoing order:

> All persons residing in the Commonwealth of Massachusetts who, (1) between September 18, 2014 and September 18, 2018, Defendant initiated in-excess of two telephone communications within a seven-day period regarding a debt which was more than thirty-days past due to their residence, cellular telephone, or other provided telephone number; and who (2) do not seek to prove actual damages.

**SO ORDERED.**

Dated: September 25, 2025

      /s/ Margaret R. Guzman
      Margaret R. Guzman
      United States District Judge